James P. Ricciardi
John H. Maddock III
Shawn R. Fox
McGUIREWOODS LLP
1345 Avenue of the Americas
Seventh Floor
New York, New York 10105
Telephone: (212) 548-2100
Facsimile:  (212) 548-2150

Counsel to Starbury Corporation

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____
                                          )
**In re:**                                )      **Chapter 11 Case**
                                          )
**STEVE & BARRY'S**                        )      **Bankruptcy Case No. 08-12579 (ALG)**
**Manhattan LLC,** *et al.*,               )      **(Jointly Administered)**
                                          )      **(Jury Trial Demanded)**
                    **Debtors.**           )
                                          )      **S.D.N.Y. Civil Action No.**
                                          )
_____)


### STARBURY CORPORTION'S MOTION TO WITHDRAW THE REFERENCE

Starbury Corporation ("Starbury"), by and through its undersigned counsel,

hereby files this motion (the "Motion") pursuant to 28 U.S.C. § 157(d), Fed.R.Bankr.P.

5011(a) and Local Bankruptcy Rule 5011-1, for entry of an order withdrawing the

Standing Order of Reference of this Court signed by Acting Chief Judge Robert J. Ward

dated July 10, 1984 (the "Reference"), providing for the automatic referral of all

bankruptcy matters, in regard to Starbury's Objection (the "Objection") to the Debtors'[1]

Notice of Assumption of Executory Contracts (Docket # 402) filed on August 8, 2008

(the "Assumption Notice"), a copy of which is attached hereto as Exhibit 1, and, in

support thereof, respectfully state as follows:

_____
[1] Terms not defined herein have the definitions ascribed them in the Objection.

**<u>Preliminary Statement</u>**

Starbury is an affiliate of Stephon Marbury ("Marbury"), a professional basketball player with the New York Knickerbockers.  In November 2005, Starbury entered into an endorsement agreement with 4004, Inc. (the "Endorsement Agreement").   Pursuant to the Endorsement Agreement, 4004, Inc. ("4004") agreed to manufacture, produce and sell various products through the Debtors' retail locations and to pay Starbury royalties in relation to such sales.  In exchange, Starbury agreed to license certain trademarks and other intellectual property along with the right to use Stephon Marbury's name and likeness (collectively, the "Marbury IP") to promote sales of Starbury products.  Starbury also agreed to have Marbury make various promotional appearances as set forth in the Endorsement Agreement.  It appears that the Endorsement Agreement was later assigned by 4004, Inc., to Baller Brands LLC.

Prior to the Debtors seeking bankruptcy protection, the Debtors breached the Endorsement Agreement numerous times.  Some of the Debtors' breaches under the Endorsement Agreement include, but are not limited to:  failing to pay royalties to Starbury when due, applying to register trademarks owned by Starbury in the Debtors' name, and failing to meet numerous other non-monetary requirements of the Endorsement Agreement.

The Debtors, by the Assumption Notice, seek to assume the Endorsement Agreement and, thereby, establish which breaches have occurred under the Endorsement Agreement and what damages are owed to Starbury.  Starbury has filed the Objection in

response to the Assumption Notice and demanded a jury trial on the matters raised

therein. Starbury files this Motion to assert its right to an adjudication of the Objection

by an Article III tribunal. Starbury has retained this right because Starbury has neither

consented to the jurisdiction of the bankruptcy court—in fact Starbury objects to the

jurisdiction of the bankruptcy court in the Objection—nor submitted to the jurisdiction of

the bankruptcy court. Therefore, this Court should withdraw the Reference with respect

to the Objection.

### **Factual Background**

1.      On or about November 4, 2005, Starbury and 4004 Incorporated, one of

the above referenced Debtors, entered into an Endorsement Agreement (the

"Endorsement Agreement") pursuant to which 4004 agreed to manufacture, produce and

sell various products through the Debtors' retail locations and to pay Starbury royalties in

relation to such sales. In exchange, Starbury agreed to license certain trademarks and

other intellectual property along with the right to use Marbury's name and likeness

(collectively, the "Marbury IP") to promote sales of Starbury products. Starbury also

agreed to have Marbury make various promotional appearances as set forth in the

Endorsement Agreement.

2.      Upon information and belief, 4004 assigned the Endorsement Agreement

to Baller Brands LLC (the "Baller Brands Assignment").

3.      Following execution of the Endorsement Agreement, the Debtors

registered various trademarks comprising certain of the Marbury IP in both the United

States and abroad.

4.      In regard to three of the trademarks, comprising certain of the Marbury IP (the "Disputed Marks"), 4004 improperly applied to register the Disputed Marks with the United States Patent and Trademark Office in its own name.

5.      On August 12, 2008, the USPTO registered two of the Disputed Marks in 4004's name.

6.      On July 9, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

7.      The Debtors owe at least $2,193,256.56 to Starbury on account of royalties earned, but not paid, prior to January 15, 2008.[2]

8.      On  July 16, 2008, the Debtors filed their Amended Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 for (i) Approval of Procedures in Connection with the Sale of all or Substantially all of the Debtors Assets, (ii) Authorization to Enter into Stalking Horse Agreements in Connection Therewith, (iii) Approval of the Payment of Stalking Horse Protections, and (iv) the Setting of Related Auction and Hearing Dates (the "Bidding Procedures Motion").

9.      On August 5, 2008, an order approving the Bidding Procedures Motion was entered by the Bankruptcy Court (Docket #369) (the "Bidding Procedures Order").

---

[2] Starbury has not received a royalty statement for any period subsequent to January 15, 2008, even though such statements are required by the terms of the Endorsement Agreement.  It is likely that there is a significant additional amount due to Starbury on account of royalties earned since January 15, 2008.

10.    The Bidding Procedures Order sets forth certain procedures for the assumption of executory contracts and unexpired leases by the Debtors.  Pursuant to those procedures, the Notice of Assumption was filed on August 8, 2008.

11.    The Assumption Notice lists the Endorsement Agreement as an agreement to be assumed, and lists its cure cost at $0.

12.    Starbury filed the Objection to the Assumption Notice concurrently with the filing of this Motion

## Relief Requested

13.    The Debtors seek to set the amounts due in order to cure the non-monetary and monetary breaches of the Endorsement Agreement owing to Starbury pursuant to the Assumption Notice.  Starbury does not consent to this determination by the Bankruptcy Court.  Moreover, the Objection also requires "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce", which mandates the district court to order withdrawal of the Reference pursuant to 28 U.S.C. § 157(d).  Therefore, by this Motion, Starbury seeks to have the Reference of the matters raised in the Objection withdrawn from the Bankruptcy Court and heard by the United States District Court for the Southern District Court of New York.

## Permissive Withdrawal of the Reference is Warranted

14.    The standing order of Reference refers to the Bankruptcy Court "any or all cases arising under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" pursuant to 28 U.S.C. § 157(a).  Section 157(d) of title 28 states, in relevant part, "[t]he district court may withdraw, in whole or in part, any case

or proceeding referred under this section, on its motion or on a timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

15.    Though "cause" in not defined in the statute, the Second Circuit has set forth several factors to consider in evaluating whether cause to withdraw the Reference exists: (1) whether the claim or proceeding is core or non-core; (2) whether it is legal or equitable; (3) and considerations of efficiency, forum shopping, and uniformity of the administration of bankruptcy law. In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2nd Cir. 1993); In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir.1996) (same).

The Objection Is Non-Core

16.    A district court should first consider whether a claim is core or non-core, "since it is upon this issue that questions of efficiency and uniformity will turn." In re Orion Pictures Corp., 4 F.3d at 1101. In Orion, a case with strikingly similar facts to the case at bar, the Second Circuit held that "[a] breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core." Id. at 1102 (holding that an action to determine pre-petition breaches of contract are non-core, while the summary determination of whether it is in a debtor's business judgment to assume a contract is core); See also In re Cinematronics, Inc., 916 F.2d 1444, 1451 (9th Cir. 1990); Beard v. Braunstein, 914 F.2d 434, 443 (3d Cir.1990). In this case, the Bankruptcy Court, by establishing the cure cost under the Endorsement Agreement, would be rendering a decision on pre-petition breaches of the Endorsement Agreement. Such determinations are clearly non-core in the Second Circuit pursuant to Orion.

17.    In non-core proceedings, "a bankruptcy court can only recommend findings of fact and conclusions of law to the district court." In re United States Lines, Inc., 197 F.3d 631, 636 (2d Cir.1999).  For this reason, courts consider a determination that a proceeding is non-core as a factor favoring withdrawal of the Reference to the bankruptcy court.  LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.), 193 B.R. 669, 675 (S.D. N.Y. 1996) ("[A]llowing core matters to remain in the bankruptcy court, and withdrawing non-core matters, promotes efficiency").  Therefore, this Court should withdraw the Reference in this matter.

Starbury Is Entitled To And Has Demanded A Jury Trial

18.    Even if this matter were core, Starbury has demanded its Article III and jury trial rights in regards to the Endorsement Agreement.  The Supreme Court has long held that a party that has not invoked the jurisdiction of the bankruptcy court is entitled to an Article III determination and a jury trial. See Langenkamp v. Culp 498 U.S. 42 (1990) (non-party defendant in preference action entitled to Article III court determination and jury trial, if right properly preserved under the pleading rules); Granfinanciera S.A. v. Nordberg, 492 U.S. 33 (1989) (same result as to fraudulent transfer defendant).  Starbury has reserved its ability to assert these rights by not submitting or consenting to the jurisdiction of the Bankruptcy Court, and, by this Motion, has demanded that its Article III and jury trial rights be enforced.  Failing to withdraw the Reference immediately would deny Starbury its constitutionally guaranteed rights.[3]

---

[3] As the plurality opinion in Northern Pipeline made clear, "the constitutional requirements for the exercise of the judicial power must be met at all stages of adjudication, and not only on appeal . . . ." Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 86 & n.39 (1982).

**Mandatory Withdrawal of the Reference is Warranted**

19.     Section 157(d) of title 28, requires a district court, on timely motion of a party, to "withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

20.     In the current case, the resolution of the Objection will likely require significant interpretation of the Lanham Act (15 U.S.C. § 1051 et. seq.) to determine what damages may be due to Starbury on account of the Disputed Marks.  When issues require significant interpretation of the Lanham, mandatory withdrawal of the Reference is warranted.  McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.), 160 B.R. 502, 506 (S.D.N.Y. 1993).  Therefore, the Reference of the Objection must be withdrawn.

WHEREFORE, Starbury respectfully requests that this Court enter an order withdrawing the Reference of the Objection to the Assumption Notice and granting such other and further relief as such Court deems just and proper.

Dated:  August 18, 2008
New York, New York

S/ James P. Ricciardi
James P. Ricciardi
John H. Maddock III
Shawn R. Fox
McGUIREWOODS LLP
1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 548-2100
Telecopier:  (212) 548-2150

Counsel to Starbury Corporation

**EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| **In re:** | ) | **Chapter 11 Case** |
| | ) | |
| **STEVE & BARRY'S** | ) | **Case No. 08-12579 (ALG)** |
| **Manhattan LLC,** *et al.*, | ) | **(Jointly Administered)** |
| | ) | **(Jury Trial Demanded)** |
| **Debtors.** | ) | |
| _____ | ) | |
| **In re:** | ) | |
| | ) | |
| **STEVE & BARRY'S** | ) | |
| **Manhattan LLC,** *et al.*, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Starbury Corporation** | ) | |
| _____ | ) | |

**STARBURY CORPORATION'S OBJECTION TO DEBTORS' PROPOSED
ASSUMPTION AND ASSIGNMENT OF ENDORSEMENT AGREEMENT**

Starbury Corporation ("Starbury"), by counsel, in support of its objection (the

"Objection") to the above styled debtors' (the "Debtors") proposed assumption and

assignment of the Endorsement Agreement (as defined below) states as follows:

**The Parties**

1.      On July 9, 2008, the Debtors each commenced with this Court a voluntary

case under the Bankruptcy Code.

2.      Starbury is a corporation organized under the laws of the State of

Delaware.

1

**Jurisdiction and Venue**

3.      Starbury, pursuant to 28 U.S.C. 157(d) and Federal Rule of Bankruptcy Procedure 5011(a), has filed, concurrently with this Objection, a motion to withdraw the standing order of reference so that the Objection may be heard by the United States District Court for the Southern District of New York (the "District Court").

4.      As a non-party to the Debtors' bankruptcy proceeding, Starbury hereby objects to the jurisdiction of the Court to hear or rule on the Objection.

5.      Starbury does not consent to the jurisdiction of the Court to hear or rule on the Objection.

6.      Because this Court lacks jurisdiction to hear or rule on the Objection, venue is not proper in this Court.  Pursuant to 28 U.S.C. § 1409(a), venue is proper in the District Court.

**Background**

A.    *Endorsement Agreement*

7.      On or about November 4, 2005, Starbury and 4004 Incorporated ("4004"), one of the above referenced Debtors, entered into an Endorsement Agreement (the "Endorsement Agreement") pursuant to which 4004 agreed to manufacture, produce and sell various products through the Debtors' retail locations and to pay Starbury royalties in relation to such sales.  In exchange, Starbury agreed to license certain trademarks and other intellectual property along with the right to use Stephon Marbury's name and likeness (collectively, the "Marbury IP") to promote sales of Starbury products.  Starbury also agreed to have Stephon Marbury make various promotional appearances as set forth in the Endorsement Agreement.

2

8.      Upon information and belief, 4004 assigned the Endorsement Agreement to Baller Brands LLC (the "Baller Brands Assignment").

9.      Following execution of the Endorsement Agreement, the Debtors applied to register various trademarks comprising certain of the Marbury IP in both the United States and abroad.

10.     In regard to three of the trademarks, comprising certain of the Marbury IP (the "Disputed Marks"), 4004 improperly applied to register the Disputed Marks with the United States Patent and Trademark Office ("USPTO") in its own name.

11.     On August 12, 2008, two of the Disputed Marks were registered in the name of 4004 by the USPTO.

B.      *Sale Motion*

12.     On July 16, 2008, the Debtors filed their Amended Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 for (i) Approval of Procedures in Connection with the Sale of All or Substantially All of the Debtors' Assets, (ii) Authorization to Enter into Stalking Horse Agreements in Connection Therewith, (iii) Approval of the Payment of Stalking Horse Protections, and (iv) the Setting of Related Auction and Hearing Dates (the "Sale Motion").

13.     On August 5, 2008, the Debtors filed a proposed Order Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 for (i) Approval of Procedures in Connection with the Sale of All or Substantially All of the Debtors' Assets, (ii) Authorization to Enter into Stalking Horse Agreements in Connection Therewith, (iii) Approval of the Payment of Stalking Horse Protections, and

(iv) the Setting of Related Auction and Hearing Dates (the "Proposed Bidding Procedures Order").

14.    Attached to the Proposed Bidding Procedures Order is a copy of the Asset Purchase Agreement Between S&B Industries, Inc. and BH S&B Holdings, LLC ("Bay Harbour") dated as of August 4, 2008 (the "Asset Purchase Agreement") pursuant to which the Debtors have agreed to sell substantially all of their assets to Bay Harbour subject to higher and better offers.

15.    Pursuant to section 2.1 of the Asset Purchase Agreement, the proposed sale of the Debtors' assets includes the assignment of those Celebrity Licenses listed on Schedule 5.8 to the Asset Purchase Agreement.

16.    In regard to Starbury, Schedule 5.8 includes the Disputed Marks and numerous other domestic and foreign trademark applications and registrations belonging to Starbury, as well as the Endorsement Agreement, the Baller Brands Assignment, and a "WWW.STARBURY.COM" ("Domain") Use and Access Licensing Agreement dated as of October 29, 2007 by and between Steve & Barry's LLC and Starbury Corporation (the "Domain Agreement").

17.    On August 5, 2008, this Court entered its Order Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 for (i) Approval of Procedures in Connection with the Sale of All or Substantially All of the Debtors' Assets, (ii) Authorization to Enter into Stalking Horse Agreements in Connection Therewith, (iii) Approval of the Payment of Stalking Horse Protections, and (iv) the Setting of Related Auction and Hearing Dates establishing bidding procedures for the sale of substantially all of the Debtors' assets (the "Bidding Procedures Order").

C.     *Assignment Schedule*

18.     Pursuant to paragraph 12 of the Bidding Procedures Order, the Debtors were required to file and serve on all contract parties an assignment schedule listing those executory contracts and unexpired leases the Debtors are requesting authority to assume and assign to Bay Harbour or other successful bidder in conjunction with the sale.

19.     On August 8, 2008, the Debtors filed their Notice of Assumption of Executory Contracts (the "Notice"). Exhibit A to the Notice is a schedule of certain license agreements the Debtors request authority to assume and assign to Bay Harbour or other successful bidder in conjunction with the sale (the "Assignment Schedule"). Under the heading "Endorsement Agreements," the Debtors list the Endorsement Agreement as an executory contract to be assumed and assigned to Bay Harbour or other successful bidder.[4]

20.     In regard to the Endorsement Agreement, the Debtors' list a proposed cure amount of $0. As a result of taking the position that the Endorsement Agreement is not in breach, the Debtors have in reality converted their dispute from a core-matter involving the Debtors' business judgment into a bilateral contract dispute—the quintessential adversary proceeding; and a non-core one at that.[5]

---

[4] On the Assignment Schedule, the Debtors reference the Endorsement Agreement as "Endorsement and License Agreement" with the contracting party listed as "4004 Incorporated" with a date of "November 4, 2005." As such, it is difficult to determine whether the Debtors intend to include the Baller Brands Assignment as an executory contract to be assumed and assigned. Starbury reserves all of its rights in regard to any proposed assumption and assignment of the Baller Brands Assignment.

[5] The Second Circuit Court of Appeals' holding in Orion therefore divests this Court of jurisdiction to hear this aspect of the objection and this objection should more properly be read as a complaint for breach of contract. In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2nd Cir. 1993).

21.     The Debtors do not list the Domain Agreement on the Assignment

Schedule as an executory contract to be assumed and assigned as part of the sale.[6]

**Applicable Legal Standard**

22.     Pursuant to 11 U.S.C. § 365(b)(1), if there has been a default under an

executory contract of the debtor, the debtor may not assume and assign such contract

unless the debtor:

> (A) cures, or provides adequate assurance that the trustee
> will promptly cure, such default . . . ;
> (B) compensates, or provides adequate assurance that the
> trustee will promptly compensate, a party other than the
> debtor to such contract . . . for any actual pecuniary loss to
> such party resulting from such default; and
> (C) provides adequate assurance of future performance
> under such contract . . . .

Section 365(b)(1) clearly requires that any default must be cured, or adequate assurance

of such cure provided, before an executory contract may be assumed. *See Pieco, Inc. v.*

*Atlantic Computer Sys. (In re Atlantic Computer Sys.)*, 173 B.R. 844, 857 (S.D.N.Y.

1994).

**First Request for Relief – Monetary Default**

23.     Pursuant to section 3(C) of the Endorsement Agreement, the Debtors are

required to provide Starbury with a written royalty statement on a quarterly basis

describing units sold, description, quantity shipped, gross invoice, amount billed

customers less itemized deductions from gross sales price and reportable sales for each

product by country.

---

[6] To the extent the Debtors intend to assume and assign the Domain Agreement in conjunction with the Asset Purchase Agreement, Starbury hereby reserves all of its rights in regard to any proposed assumption and assignment of the Domain Agreement.

24.     Pursuant to a royalty statement provided by the Debtors with an effective date of January 15, 2008 (the "January 15, 2008 Royalty Statement"), the cumulative amount of royalties due Starbury from inception of the Endorsement Agreement was $8,151,182.59.

25.     From inception of the Endorsement Agreement, the Debtors have made various payments to Starbury totaling $5,957,926.03.

26.     Accordingly, based on the cumulative amount of royalties set forth on the January 15, 2008 Royalty Statement, at least $2,193,256.56 in outstanding royalty payments is due and owing from the Debtors to Starbury under the Endorsement Agreement.

27.     Further, because the January 15, 2008 Royalty Statement is effective only through January 15, 2008, and the Debtors have not provided any subsequent royalty statements, it is currently not known what additional amounts are due and owing for sales and/or purchase orders not reflected on the January 15, 2008 Royalty Statement (the "Additional Royalties").

28.     The total amount required to cure the Debtor's default under the Endorsement Agreement for outstanding royalty payments as required by § 365(b)(1) is $2,193,256.59 plus the Additional Royalties

29.     Accordingly, in regard to its First Request for Relief, Starbury respectfully requests the District Court to enter an order denying the Debtors' Sale Motion to the extent the Sale Motion requests authority for the Debtors to assume and assign the Endorsement Agreement to Bay Harbour or other successful bidder unless and until the Debtors' cure their default in regard to outstanding royalty payments due under the

Endorsement Agreement by paying Starbury $2,193,256.59 plus the Additional Royalties.

## Second Request for Relief – Non-monetary Default
## (Disputed Marks)

30.    11 U.S.C. § 365(b)(1)(A) provides in part that if there has been a default in an executory contract of the debtor, the trustee may not assume such contract unless, at the time of the assumption of such contract, the trustee cures, or provides adequate assurance that the trustee will promptly cure, such default. The obligation to cure defaults extends to non-monetary as well as monetary defaults. *See In re Carterhouse, Inc.*, 94 B.R. 271, 273 (Bankr. D. Conn. 1988), citing *Madisonview Towers v. Yardley (In re Yardley)*, 77 B.R. 643, 645 (Bankr. M.D. Tenn. 1987).

31.    Under the Endorsement Agreement, 4004 recognized and acknowledged that all rights in the Marbury IP, including the goodwill therein, belonged exclusively to Starbury, and agreed to execute any and all documents reasonably requested by Starbury to give effect to Starbury exclusive ownership of the Marbury IP.

32.    4004 improperly applied to register the Disputed Marks with the USPTO. Moreover, due to this action, the USPTO registered two of the Disputed Marks in the name of 4004.

33.    The improper application to register the Disputed Marks and the subsequent registration of at least two of the Disputed Marks with the USPTO must be cured as required by § 365(b)(1) before the Debtors may assume and assign the Endorsement Agreement.

34.    Accordingly, in regard to its Second Request for Relief, Starbury respectfully requests the District Court to enter an order denying the Debtors' Sale

Motion to the extent the Sale Motion requests authority for the Debtors to assume and assign the Endorsement Agreement to Bay Harbour or other successful bidder unless and until the Debtors cure by paying Starbury damages on account of the improper assignment or by assigning the Disputed Marks, along with the goodwill associated therein, to Starbury**.**

**Third Request for Relief – Non-monetary Default**
**(Other Defaults)**

35.    11 U.S.C. § 365(b)(1)(A) provides in part that if there has been a default in an executory contract of the debtor, the trustee may not assume such contract unless, at the time of the assumption of such contract, the trustee cures, or provides adequate assurance that the trustee will promptly cure, such default. A debtor's obligation to cure defaults extends to non-monetary as well as monetary defaults. *See In re Carterhouse, Inc.*, 94 B.R. 271, 273 (Bankr. D. Conn. 1988), citing *Madisonview Towers v. Yardley (In re Yardley)*, 77 B.R. 643, 645 (Bankr. M.D. Tenn. 1987).

36.    Pursuant to § 3(C) of the Endorsement Agreement, Starbury is entitled to receive written royalty statements on a quarterly basis from a duly authorized officer of 4004 reciting, among other things, units sold, description, quantity shipped, and reportable sales for each licensed product and country (the "Royalty Statements").

37.    The last Royalty Statement provided to Starbury was the January 15, 2008 Royalty Statement. The Debtors have failed to provide Starbury Royalty Statements for the past two (2) quarters.

38.    The Debtors' failure to furnish the Royalty Statements to Starbury constitutes a default under the Endorsement Agreement.

39.     Pursuant to § 11(A) of the Endorsement Agreement, 4004 is required to "obtain and maintain at its own cost and expense . . . standard Product Liability Insurance naming Endorser [*i.e.*, Starbury] as an additional insured" and to "furnish Endorser a certificate of insurance evidencing such insurance prior to the manufacture, distribution, or sale of the Product."

40.     Starbury has requested that 4004 furnish Starbury with a certificate of insurance pursuant to § 11(A) (the "Insurance Certificate") evidencing coverage but 4004 has failed to comply with Starbury's request.

41.     The Debtors' failure to furnish Starbury with an Insurance Certificate constitutes a default under the Endorsement Agreement.

42.     Pursuant to § 6(A) of the Endorsement Agreement, Starbury, or one of its representatives, is entitled to inspect the books and records of 4004 once every twelve (12) months with respect to the subject matter of the Endorsement Agreement (the "Audit Rights").

43.     Starbury has attempted to exercise its Audit Rights under § 6(A) by requesting access to 4004's books and records but 4004 has refused to comply.

44.     The Debtors' failure to allow Starbury, or one of its representatives, to inspect the books and records of 4004 constitutes a default under the Endorsement Agreement.

45.     Accordingly, in regard to its Third Request for Relief, Starbury respectfully requests the District Court to enter an order denying the Debtors' Sale Motion to the extent the Sale Motion requests authority for the Debtors to assume and assign the Endorsement Agreement to Bay Harbour or other successful bidder unless and

until the Debtors cure the above referred to non-monetary defaults under the

Endorsement Agreement by paying damages to Starbury on account of these non-

monetary defaults or (1) providing Starbury with all missing Royalty Statements, (2)

furnishing Starbury with a certificate of insurance evidencing any and all insurance

policies Debtors have purchased and maintained since the inception of the Endorsement

Agreement, and (3) allowing Starbury to inspect 4004's books and records.

### **Jury Demand**

Starbury hereby demands a jury trial in the District Court for all maters related to

the Endorsement Agreement, including, but not limited to, those matters raised in the

Objection.


WHEREFORE, Starbury respectfully requests that the District Court enter an

order:

(1) denying the Debtors' Sale Motion to the extent the Sale Motion requests

authority for the Debtors to assume and assign the Endorsement Agreement to Bay

Harbour or other successful bidder unless and until the Debtors cure all existing defaults

under the Endorsement Agreement, including:

> (a) payment of $2,193,256.56 plus the Additional Royalties in satisfaction of all
> outstanding royalties due Starbury under the Endorsement Agreement; and

> (b) the payment of damages in an amount to be determined by a jury on account
> of any and all non-monetary defaults arising from the Endorsement Agreement; or

> (c)(i)  the assignment of the Disputed Marks to Starbury**;** and

> (ii)  providing Starbury with all missing Royalty Statements; and

(iii)  furnishing Starbury with a certificate of insurance evidencing any or all insurance policies Debtors have purchased and maintained since the inception of the Endorsement Agreement; and

(iv)  allowing Starbury to inspect 4004's books and records; and

 (2) granting Starbury any other relief as is just and appropriate.


Dated: New York, New York
       August 18, 2008                    McGUIREWOODS LLP


                                          By: S/  James P. Ricciardi
                                          James P. Ricciardi
                                          John H. Maddock III
                                          Shawn R. Fox
                                          McGUIREWOODS LLP
                                          1345 Avenue of the Americas
                                          Seventh Floor
                                          New York, New York 10105-0106
                                          Telephone:    212.548.2100
                                          Facsimile:    212.548.2150

                                          Counsel for Starbury Corporation